**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Edward J. PRINCE and Wallace L. Hammer, a/k/a J. B. Roach, Defendants-Appellants.**

**No. 73-2764.**

United States Court of Appeals,
Fifth Circuit.

July 12, 1974.

Rehearing Denied Sept. 4, 1974.

Rehearing and Rehearing En Banc
Denied Oct. 1, 1974.

Emmett Colvin, Dallas, Tex., for Edward J. Prince.

Neal B. Wheeler, Dallas, Tex. (Court-appointed), for Wallace L. Hammer.

Frank D. McCown, U. S. Atty., Fort Worth, Tex., Richard D. Kibby, Fraud Section Crim. Div., Dept. of Justice, Washington, D. C., for plaintiff-appellee.

Before GEWIN, THORNBERRY and SIMPSON, Circuit Judges.

THORNBERRY, Circuit Judge:

Wallace Hammer and Edward Prince were charged in a forty-two count indictment with violations of the anti-fraud provisions of the Securities Act of 1933, 15 U.S.C. § 77q(a), the mail fraud statute, 18 U.S.C. § 1341, registration provisions of the Securities Act of 1933, 15 U.S.C. § 77e(a), and the conspiracy statute, 18 U.S.C. § 371.[1] Appellant Hammer was convicted by a jury

---

1. 15 U.S.C. § 77q(a) provides in pertinent part:

§ 77q. *Fraudulent interstate transactions*

(a) It shall be unlawful for any person in the offer or sale of any securities by the use of any means or instruments of transportation or communication in interstate commerce or by the use of the mails, directly or indirectly—

(1) to employ any device, scheme, or artifice to defraud, or

(2) to obtain money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

(3) to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser.

18 U.S.C. § 1341 provides:

§ 1341. *Frauds and swindles*

Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, or to sell, dispose of, loan, exchange, alter, give away, distribute, supply, or furnish or procure for unlawful use any counterfeit or spurious coin, obligation, security, or other article, or anything represented to be or intimated or held out to be such counterfeit or spurious article, for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Post Office Department, or takes or receives therefrom, any such matter or thing, or

knowingly causes to be delivered by mail according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing, shall be fined not more than $1,000 or imprisoned not more than five years, or both.

15 U.S.C. § 77e provides in pertinent part:

§ 77e. *Prohibitions relating to interstate commerce and the mails*

(a) Unless a registration statement is in effect as to a security, it shall be unlawful for any person, directly or indirectly—

(1) to make use of any means or instruments of transportation or communication in interstate commerce or of the mails to sell such security through the use or medium of any prospectus or otherwise; or

(2) to carry or cause to be carried through the mails or in interstate commerce, by any means or instruments of transportation, any such security for the purpose of sale or for delivery after sale.

18 U.S.C. § 371 provides:

§ 371. *Conspiracy to commit offense or to defraud United States*

If two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined not more than $10,000 or imprisoned not more than five years, or both.

If, however, the offense, the commission of which is the object of the conspiracy, is a misdemeanor only, the punishment for such conspiracy shall not exceed the maximum punishment provided for such misdemeanor.

on seventeen counts: five for violating the anti-fraud provisions, eight for violating the mail fraud statute, three for violating the registration provisions, and one for violating the conspiracy statute. On the three counts charging violations of the registration provisions, the district court granted Hammer's post-conviction motion for a judgment of acquittal because the prosecution had failed to prove that the stock was not exempted from the registration requirements of the Act. Hammer was sentenced to serve five-year concurrent sentences on each of twelve counts, fined $5,000 on each of two counts, and placed on probation for the five years following his incarceration.

Appellant Prince was convicted on a total of four counts: one for violating the anti-fraud provisions, two for violating the mail fraud statute, and one for violating the conspiracy statute. He was sentenced to three years in prison, $15,000 in fines, and five years probation following his release. Two other defendants were tried with the appellants, but as to them, the jury was unable to reach a verdict.

█ Neither appellant denies that there was a conspiracy in violation of 18 U.S.C. § 371. Nor does either deny that there was a scheme to defraud persons in the offer and sale of securities in violation of 15 U.S.C. § 77q and 18 U.S.C. § 1341. To be sure, the evidence in this record indicates a securities fraud operation of massive proportions. Rather, each appellant contends that he was not a knowing participant in the conspiracy, and on the counts not requiring conspiratorial conduct, that he lacked the requisite intent or knowledge to violate the law. Both appellants also contend that the district court erred in overruling their objections to the admission of co-conspirator hearsay declarations.[2]

Viewed in the light most favorable to the verdict, Glasser v. United States, 1942, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680, the evidence leaves little room for conjecture on appellants' first contention. In August of 1967, two men named Todd and Farr acquired control of United Australian Oil, Inc., (UAO) by exchanging $80,000 worth of property, notes, and cash for 820,000 shares of UAO stock then owned by Nortex Oil and Gas Corporation. From the moment of its quiet acquisition until its ignominious denouement, UAO was nothing but a shell corporation, valuable only as a vehicle for future corporate activity. Although the corporation had a large number of public shareholders at the time of acquisition by Todd and Farr, it had no assets of any value. In fact, Nortex Oil and Gas Corporation had listed UAO on its financial books as having no value.

The modus operandi employed by UAO insiders was clearly described by the testimony and the exhibits introduced below. Within weeks of the takeover, nearly worthless assets were placed in UAO by Todd and his associates, including appellant Hammer, in return for large blocks of stock. A materially misleading letter was then prepared and distributed to UAO shareholders throughout the nation announcing these acquisitions, and predicting a rosy future for the corporation and its shareholders. In the year that followed, the appellants and other insiders sold at least 17 million shares of unregistered

---

2. In addition, Hammer separately contends that the trial court erred in granting a judgment of acquittal on three counts after the jury had found him guilty rather than before, that the district court erred in giving certain supplemental instructions with respect to these three counts, that the district court erred in giving an *Allen* charge, that the district court erred in permitting the government to cross examine the appellant's character witness with regard to Hammer's tax evasion conviction then on appeal, and erred in permitting another federal district judge of the same court to correct an illegal sentence by imposing $5,000 fines on each of two counts instead of one $10,000 fine. We find no merit in any of these contentions. *See* Michelson v. United States, 1948, 335 U.S. 469, 69 S.Ct. 213, 93 L.Ed. 168; United States v. Bailey, 5th Cir. 1972, 468 F.2d 652, aff'd en banc, 5th Cir. 1973, 480 F.2d 518; F.R.Crim.P. 35.

stock to the public for a total of $4,657,716.60.

In November of 1967, a shareholder's report was prepared reflecting current assets of over a million dollars. An independent attorney advised UAO officials that, since the corporation had more than 500 shareholders and now more than a million dollars in assets, registration with the SEC was required. This report was never mailed to UAO stockholders. Instead, a new report, showing assets of $966,216.28, was prepared and mailed to UAO stockholders along with a stock rights offering.

In the fall of 1968, Hammer requested Prince to prepare a report announcing UAO's acquisition of a gold mine, and Prince performed. The report enthusiastically quoted what was portrayed to be an engineer's report which stated that the mine had at least $40,000,000 worth of gold in it, along with other assorted ores. The report, however, painted a nonexisting reality. UAO had acquired an option to acquire an option on the "gold mine" early in 1968, but the option had expired unexercised before the publicly announced "acquisition." The engineer quoted in the report had been dead for years, and the quotation from the engineer's report related to a claim which was not even included in the option. Last but not least, the mine was worthless.

Prince testified at the trial that he sold valuable timber rights to UAO for UAO stock. He contends that he was merely the "innocent dupe" of other, more sophisticated UAO insiders who admittedly were engaging in a large scale fraud on the public, and that this bona fide business transaction proves his innocence. In the circumstances revealed by the record, Prince's contention strikes us as singularly hollow and without any merit. First, although Prince claimed that the corporation had agreed to exchange stock for timber, he admitted that there was no written agreement to that effect. In fact, although Prince received UAO stock, he did not convey his timber rights to the corporation. Instead, he sold the timber to others outside the corporation and kept the proceeds. Second, in the single year which forms the life of this criminal enterprise, Prince sold 4,505,000 shares of UAO stock in his own name for $1,219,607.35, and an additional 400,000 shares listed in the name of Farr. On these sales, he received the rather generous commission of 15% to 25% of the proceeds. None of the proceeds ever found their way into UAO corporate coffers. Instead, the proceeds less commissions were delivered to Hammer and others. Prince used at least some of the proceeds to purchase ten Cadillacs and two Buick Rivieras on behalf of UAO insiders. Finally, Prince had been a municipal bond dealer in the heart of the Chicago financial district for over forty years. Thus we are faced with a man of accumulated business acumen, who dealt in bonds, prepared a patently fraudulent report without making the slightest effort to ascertain its truthfulness, sold over four million shares of an unregistered stock at an extraordinary premium, sold valuable timber rights to a corporation without written evidence of any agreement, and paradoxically sold the same timber to other parties retaining both the UAO stock and the proceeds from the timber sold.

Hammer was variously described in the trial testimony as Todd's "agent" or "associate," as the "office manager," and as a UAO vice president. He was associated with UAO from the moment of Todd's acquisition, and evidently worked very closely with Todd. He directed Prince to prepare the fraudulent report on the gold mine. He directed a UAO secretary to issue to him blank stock certificates. He personally sold over 150,000 shares of UAO stock. Several witnesses testified that Hammer was the distributor of the proceeds from the sales of UAO stock by other insiders. Other witnesses testified that Hammer had threatened and intimidated several persons with regard to an SEC investigation of UAO.

With respect to each of the challenged convictions, we must sustain the verdict if there is substantial evidence, direct or circumstantial, to support it. "Substantial evidence" in this context means evidence that a reasonably minded jury could accept as adequate and sufficient to support the conclusion of defendant's guilt beyond a reasonable doubt. United States v. Barfield, 5th Cir. 1971, 447 F. 2d 85; United States v. Reid, 5th Cir. 1971, 441 F.2d 1089; United States v. Warner, 5th Cir. 1971, 441 F.2d 821; United States v. Bass, 5th Cir. 1974, 490 F.2d 846. We reiterate, however, that the appellants are challenging the sufficiency of the evidence with regard to only one element of the crimes charged: the required state of mind. The appellants allege not only that they lacked the specific intent to do what is proscribed by the mail fraud statute or the antifraud provisions of the Securities Act of 1933, but also that they were not knowing participants in the conspiracy.[3]

■■ Each of the statutory offenses for which the appellants were convicted requires specific intent. *See* Estep v. United States, 5th Cir. 1955, 223 F.2d 19, cert. denied, 350 U.S. 863, 76 S.Ct. 105, 100 L.Ed. 765; Blachly v. United States, 5th Cir. 1967, 380 F.2d 665; United States v. Vandersee, 3rd Cir. 1960, 279 F.2d 176, 179, cert. denied, 1961, 364 U.S. 943, 81 S.Ct. 463, 5 L.Ed. 2d 374; United States v. Marine, 7th Cir. 1969, 413 F.2d 214, 216, cert. denied, 1970, 396 U.S. 1001, 90 S.Ct. 550, 24 L. Ed.2d 493. But of course, direct proof of the appellants' state of mind or participation in a criminal conspiracy is not required. Blachly v. United States, supra; Glasser v. United States, supra, 315 U.S. at 80, 62 S.Ct. at 469. Intent, knowledge, and participation in a conspiracy may be inferred from the activities of the parties and thus may be proved by circumstantial evidence. As the district judge noted in her charge, state of mind can rarely be established by any other means. *See also* Gusow v. United States, 10th Cir. 1965, 347 F.2d 755, 759–760; Aiken v. United States, 4th Cir. 1939, 108 F.2d 182, 183. This does not mean that the government has met its burden where reasonably minded jurors must resort to conjecture or where the evidence is not inconsistent with the hypothesis of the accused's innocence. It does mean that our criminal jurisprudence ascribes much weight to the words and conduct of those accused of crimes. In the words of Justice Holmes, even a dog distinguishes between being stumbled over and being kicked. Holmes, The Common Law, p. 3 (1881 ed.). Based upon the record evidence, we think it was clearly a jury question whether each appellant possessed the requisite intent and knowledge and participated in the conspiracy. Blachly v. United States, supra; Glasser v. United States, supra; United States v. Apollo, 5th Cir. 1973, 476 F.2d 156, 162.

■ Both appellants objected to the admission of hearsay declarations of co-conspirators on the ground that the admitted statements were not made in furtherance of the conspiracy. The challenged testimony consisted of statements by co-conspirators concerning the cash that the scheme had generated, the procedure by which stockbrokers' questions concerning share restrictions should be answered, the destruction of records, the possibility of further inquiry by the SEC, and threats made by conspirators to insure silence within the group. Having studied the record and the con-

---

3. They readily admit, however, the existence of an illegal conspiracy. And once such a conspiracy has been established, only slight evidence is required to connect an individual with it. United States v. Fontenot, 5th Cir. 1973, 483 F.2d 315, 321; United States v. Edwards, 5th Cir. 1974, 488 F.2d 1154, 1157. But guilt may not be inferred from mere association. To establish criminal conspira-

torial conduct, the proof must show that each appellant agreed with one or more persons to do what is proscribed by the mail fraud statute or the anti-fraud provisions of the Securities Act, and it must show an overt act by one conspirator in furtherance of that agreement. United States v. Edwards, supra.

text in which the remarks and the testimony were made, we conclude that the statements were made in furtherance of the conspiracy and were therefore admissible. *See* United States v. Nall, 5th Cir. 1971, 437 F.2d 1177, 1182–1183; United States v. Harrell, 5th Cir. 1970, 436 F.2d 606, 613; United States v. Johnson, 5th Cir. 1972, 466 F.2d 508; Dutton v. Evans, 1970, 400 U.S. 74, 81, 91 S.Ct. 210, 215, 27 L.Ed.2d 213; Lutwak v. United States, 1953, 344 U.S. 604, 73 S.Ct. 481, 97 L.Ed. 593.

The convictions are affirmed.