UNITED STATES of America,
Plaintiff-Appellee,

v.

Troy Gary SAXTON, a/k/a David T.
Getty, Defendant-Appellant.

No. 81–2334.

United States Court of Appeals,
Fifth Circuit.

Nov. 1, 1982.

Rehearing Denied Dec. 1, 1982.

Randy Schaffer, Houston, Tex., for defendant-appellant.

John M. Potter, Asst. U.S. Atty., Houston, Tex., James Griffith Lindsay, Atty., Appellate Section, Crim.Div., Washington, D.C., for plaintiff-appellee.

Before INGRAHAM, REAVLEY and POLITZ, Circuit Judges.

POLITZ, Circuit Judge:

Troy Gary Saxton, known also as David T. Getty, convicted by a jury of nine counts of mail fraud, 18 U.S.C. § 1341,[1] appeals, challenging the sufficiency of the evidence and his sentencing on separate counts. Finding no merit to these contentions, we affirm the convictions.

*Facts*

In November 1977, Saxton was hired by Success Finance, a financial brokerage business incorporated three months before, to assemble financial packages and perform related activities. He encouraged the owners of Success Finance to establish Intercontinental Communications Center and Answering Service (ICCAS). ICCAS, incorporated in February 1978, was planned as a long-distance telephone service but functioned primarily as an answering service. During this period, Saxton met Roberta Shy, establishing both a business and personal relationship. By August 1978, Saxton, his son, Roberta Shy, and her son Edward and daughter Faye, had moved into a house as a family unit. Faye and Edward

---

1. 18 U.S.C. § 1341 provides in pertinent part: Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, ... for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or deliv-

ered by the Postal Service, or takes or receives therefrom any such matter or thing, or knowingly causes to be delivered by mail according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing, shall be fined not more than $1,000 or imprisoned not more than five years, or both.

Shy were employed by ICCAS as a secretary and phone operator, respectively.

On December 5, 1977, Saxton applied, through the mails, for an American Express credit card in the name of David T. Getty. In the application he stated that he had resided at his then-current Houston address for six months. He had been at that address less than one month. Saxton stated that he had been employed by Commonwealth Corporation for over 10 years, and his annual salary was $26,400. He listed an incorrect four-digit social security number. He also applied for cards for "family" members Roberta Shy Getty and Faye Shy Getty.

Saxton gave Faye Shy, who was then functioning as his secretary, a copy of the credit application for use in responding to telephone or mail inquiries which might be directed by American Express to Commonwealth Corporation. The address given for Commonwealth Corporation on the application was that of ICCAS. The credit request was approved and the cards were issued by mail.

Between June 4, 1978 and September 20, 1978, Saxton made application for and was issued credit cards by Texaco, Exxon, Diners Club, and Carte Blanche. In each instance he listed his employer as Success Finance/ICCAS, giving the number of the telephone answered by Faye Shy to whom he gave a copy of each application for use in verifying the various statements contained therein.[2]

Saxton used the cards to purchase goods, services and traveler's checks, including such items as a trip with Roberta Shy to Acapulco and a round-trip flight for two from Houston to Dallas for supper.[3] He also purchased gifts for Faye and Edward Shy and allowed them to use his cards. Saxton initially kept the accounts current, but from September through November 1978, he "paid" the accounts with dishonored checks. Thereafter no effort to pay was made. Finally the companies terminated the accounts. During the latter period, Saxton moved to California with Edward Shy and continued in his use of the cards. The combined losses sustained by American Express, Diners Club, Carte Blanche, Exxon and Texaco exceeded $50,000.

Nine counts of the indictment charge the use of the mails for submission of applications, delivery of the credit cards and exchange of letters relative to a pending application. The tenth count charges the use of the mails for delivery of a MasterCard card. The court ordered an acquittal on this last count when the evidence disclosed hand-delivery of that card. The court sentenced Saxton to a two-year term of imprisonment on each of the nine counts with the terms to be served consecutively.

### Sufficiency of the Evidence

In reviewing sufficiency of the evidence we consider the evidence in the light most favorable to the jury's conclusion, accepting all credibility choices and reasonable inferences which tend to support the verdict. A reversal is in order only if we conclude a reasonable jury would have been compelled to find that guilt was not proven beyond a reasonable doubt. *United States v. Khamis*, 674 F.2d 390 (5th Cir. 1982).

---

**2.** The applications were made in the name of David T. Getty and contained the following representations:

*Texaco:* Employed by Success Finance/ICCAS for ten years; residence 3½ years; salary $25,200. Application 6/78; card issued 6/78.

*Exxon:* Employed by Success Finance/ICCAS for 10 years; residence 3½ years; salary $24,000. Application 6/78; card issued 6/78.

*Diners Club:* Employed by Success Finance/ICCAS for 11 years; residence 3 years; salary $35,000. Application 7/78; card issued 9/78.

*Carte Blanche:* Employed by Success Finance/ICCAS for 11 years; residence 3 years; salary $35,000. Application estimated 7/78; card issued 9/78.

**3.** This flight was whimsical. Saxton was accompanying a departing passenger in the Houston airport. When told that only ticketed passengers could gain access to the airport concourse, he purchased two round-trip tickets to Dallas. He had supper there and returned to Houston. Credit cards were used for expenses incurred on this trip.

Saxton maintains that his default in paying the bills is not criminal under § 1341 unless the failure was part of a scheme devised in advance, citing *United States v. Green,* 494 F.2d 820 (5th Cir.), *cert. denied,* 419 U.S. 1004, 95 S.Ct. 325, 42 L.Ed.2d 280 (1974). The defendants in *Green* were convicted under § 1341 because "they used the mails to submit the applications in attempting to secure credit cards for use in their fraudulent scheme to obtain goods and services without intending to pay for them." 494 F.2d at 822 n.4. The jury was so instructed. Saxton argues that the evidence does not support a conclusion that a scheme to default existed when the applications were first sought because subsequent nonpayment alone does not suffice to prove original intent to defraud.

Saxton points to several facts as evidence that no scheme ever existed: there was a sufficient tie between Success Finance/ICCAS and Commonwealth to justify tacking the employment periods together as one, he initially made payments, and he legally changed his name to Getty after moving to California. The innocent inferences suggested are reasonable. So are other inferences which are inculpatory. Edward Shy suggested the name change was motivated by credit difficulties. Payment for the first uses of the cards, followed by payment by worthless checks, followed by total default, may be viewed as a means of lulling the creditor, raising the debt ceiling, and extending the effective period in which the scheme might be pursued. The claim of employment may be considered part of the verification model designed to conceal the misrepresentations.

■■■ Interpreting the evidence and selecting reasonable inferences is the exclusive province of the jury. As we observed in one of the last en banc opinions by the Former Fifth Circuit:

> It is not necessary that the evidence exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt, provided a reasonable trier of fact could find that the evidence establishes guilt beyond

a reasonable doubt. A jury is free to choose among reasonable constructions of the evidence.

*United States v. Bell,* 678 F.2d 547, 549 (5th Cir. 1982) (footnote omitted). We conclude that a reasonable jury could credit an interpretation and draw reasonable inferences that Saxton devised a fraudulent scheme. Moreover, there is undisputed evidence the jury could have considered. Claims made on the applications, such as length of residence, salary, and the "adoption" of Faye Shy, were simply untrue. And the method of assuring the concealment of the misrepresentations was laid at the keel. Since fraudulent intent is inferable from circumstantial evidence, *United States v. Prince,* 496 F.2d 1289 (5th Cir. 1974), *cert. denied,* 419 U.S. 1107, 95 S.Ct. 779, 42 L.Ed.2d 804 (1975), a jury reasonably may infer Saxton's guilt from a collection of material, fraudulent claims and a verification procedure capable of hiding the malefaction.

The decision we confront is not whether we would find Saxton guilty, but rather whether a reasonable jury could have done so. *United States v. Alonzo,* 681 F.2d 997 (5th Cir. 1982). The record contains sufficient evidence upon which reasonable jurors, drawing reasonable inferences and making reasonable interpretations, could find Saxton guilty of mail fraud.

### Separate Counts

■■ Saxton challenges the consecutive sentences received on separate counts, because the counts involve the same scheme or *mens rea.* For example, Saxton was charged in one count for the mailing of the application and in another count for the use of the mails in the delivery of the requested credit card. He argues that Congress did not intend the mail fraud statute to act as a count-multiplier.

Neither the statutory language nor the jurisprudence lends Saxton support. Early on, in *Badders v. United States,* 240 U.S. 391, 36 S.Ct. 367, 60 L.Ed. 706 (1916), the Supreme Court announced that each mailing in a fraudulent scheme constitutes a separate offense. *See United States v. To-*

*ney,* 598 F.2d 1349 (5th Cir. 1979) (two letters of inquiry from victims' attorney constitute separate offenses), *cert. denied,* 444 U.S. 1033, 100 S.Ct. 706, 62 L.Ed.2d 670 (1980); *United States v. Ledesma,* 632 F.2d 670 (7th Cir.) (separate counts proper for fraudulent insurance claim and a check sent in settlement thereof), *cert. denied,* 444 U.S. 998, 101 S.Ct. 539, 66 L.Ed.2d 296 (1980). *See also United States v. Miranne,* 688 F.2d 980 (5th Cir. 1982) (42 counts under 18 U.S.C. § 1014 proper; defendant photocopied original fraudulent loan form 41 times).

The convictions are AFFIRMED.