UNITED STATES of America,
Plaintiff-Appellee,

v.

Carl MURPHY, Jr., Defendant-Appellant.

No. 82–4345.

United States Court of Appeals,
Fifth Circuit.

April 4, 1983.

John B. Farese, Ashland, Miss., for defendant-appellant.

Glen H. Davidson, U.S. Atty., Oxford, Miss., Thomas W. Dawson, Asst. U.S. Atty., Oxford, Miss., for plaintiff-appellee.

Before RUBIN, GARZA and WILLIAMS, Circuit Judges.

PER CURIAM:

Defendant Carl Murphy was tried and convicted of twenty counts of mail fraud, three counts of aiding and assisting in the preparation of false tax returns, and three counts of dealing in stolen automobiles. He was sentenced to thirteen years imprisonment. Much of the trial below centered around the defendant's interest in and control of a convenience store known variously as "78 Handy Pak" and "Carl's," that is located in Lee County, Mississippi. The store does a brisk business, in large part, because it is located on the county line with two dry counties.

Defendant admittedly controlled the business until 1971, when he was in a disabling automobile accident. As a result of the accident, he was unable to work; he, consequently, filed for both Veterans Administration (hereinafter VA) and social security benefits. In the eight year period covered by the indictment (1973–1980), defendant filed annual forms with the VA, in which he reported no income except his social security benefits. The only exception to this is 1975, when he reported $401 in cash. When he filed for social security benefits, he signed a form in which he promised to notify the agency in the event that he was able to return to work, became employed, or became self-employed. He gave no such notification. Despite defendant's protestations to the contrary, the government contended at trial, and the jury concurred, that during this period defendant was the owner of the 78 Handy Pak and that he received substantial income from its operation, as well as proceeds from several stolen automobile transactions.

Murphy filed no tax returns during the years covered by the indictment, and in the course of making its case against defendant, the government presented evidence to the effect that it was Murphy who called an accountant and requested that he prepare tax returns for J.R. Howell, one of the "lessees" of the store. Although the tax returns were formally filed by Howell, the jury found this to be another part of the fraud that Murphy perpetrated on the government. Defendant Murphy presented a different picture of his activities. He claimed to have leased the store to a series of individuals, including his wife, J.R. Howell, Dwight Graham, James Hill, and his daughter, Lisa. He admits a limited presence in the store, but claims that he only went to the store to socialize with customers. He also admitted that he borrowed money from the Bank of Mississippi for the purchase of stock for the store, but maintains that he did so only because the lessees did not have a line of credit.

The first point of Murphy's appeal is a challenge to the trial court's failure to sever the "independent and unrelated" counts of the indictment. The improper joinder of twenty counts of mail fraud, three counts of aiding and assisting in the preparation of false tax returns and three counts of dealing in stolen automobiles resulted in a conviction, defendant maintains, simply because there were so many different charges against him. He argues that he was improperly painted as a man with a criminal disposition. He also maintains that the variety of charges led to jury confusion and that he was, therefore, convicted of all counts when there was insufficient evidence to support a conviction on any one count.

The most obvious weakness of this point of appeal is that trial counsel never requested severance. The government suggests that this was deliberate trial strategy by the three attorneys who represented Murphy. Defense counsel knew that the government would be relying on the testimony of several convicted felons with respect to the automobile counts. Counsel, in the government's estimation, planned a total destruction of the credibility of these witnesses and sought a reverse spill-over effect, which would undermine the entire government case. The fact that this strategy was unsuccessful does not now entitle the defendant to a reversal, the government concludes.

This court has often expressed its disfavor with the practice of appealing matters which have not first been presented to the district court. In *Correa-Negron v. United*

*States,* 473 F.2d 684 (5th Cir.1973), the court noted that it "has emphasized on numerous occasions that '[w]e will not notice matters which were not presented to the district court except to prevent a miscarriage of justice. Petitioner cannot try one case below and another on appeal.'" 473 F.2d at 685 (citations omitted) quoting *Conklin v. Wainwright,* 424 F.2d 516, 517–18 (5th Cir. 1970). *See United States v. Wilson,* 657 F.2d 755, 764 (5th Cir.1981).

■ The failure of counsel to request severance is not fatal if the error is substantial enough to constitute plain error. Fed.R.Crim.P. 52(b). Such is not the case here. When the counts of the indictment are examined, it becomes clear that they are connected by a common thread, which is that they all involve transactions conducted at and through the 78 Handy Pak. Defendant insists that the stolen automobile counts have no connection with the remainder of the case. While it is true that the stolen automobile counts could have been tried separately, it is also certain that the money gained from these sales is relevant to the issue of what amount of money should have been reported in Murphy's tax returns. In sum, whether the issue is retail sales conducted through the store or the automobile sales conducted there, the evidence of each relates to Murphy's control and interest in the transactions and, consequently, his income and employment status. Even had the counts been severed, much of the evidence of the other counts would have been admissible in separate trials. For this reason, any imagined error clearly does not reach the level of plain error.

The second point of error raised by defendant concerns the admission of evidence of alleged criminal activity which was not included in the indictment. The challenged testimony related to (1) the purchase and resale of Coors beer at a time when the sale was illegal in Mississippi and (2) the purchase and resale of a truck.

The testimony about the truck sale was not objected to in the trial court. Consequently, the admission of this evidence will be cause for reversal only if it is adjudged plain error. On appeal, defendant contends that the evidence relating to his sale of a vehicle, the title of which was in the name of J.R. Howell, improperly suggests that he was dealing in counterfeit titles and stolen vehicles. This is untrue. The trial testimony demonstrated the validity of the title. The fact that the title was in J.R. Howell's name was relevant to a showing that Murphy was using a front man to hide his interest in certain transactions. There was no implication that Murphy was involved in the dealing of counterfeit titles. This portion of defendant's appeal is utterly meritless.

■ The testimony about the Coors beer purchases came from Charles Seger, who testified that, on four occasions, he had driven a truck hauling Coors beer into Mississippi. He further testified that the trips were made on Murphy's instructions, with Murphy's funds, and that the beer was delivered to Murphy's home, where it was stored before being transferred to the store. No error can be found in the admission of this testimony, which clearly relates to a central issue in the case, the ownership and control of the 78 Handy Pak. The government made no mention of the fact that possession of Coors beer, without state tax stamps, violated a state statute at the time of the purchases.

■ Finally, Murphy charges that the evidence is insufficient to sustain his conviction and that the trial judge therefore erred in failing to grant his motion for judgment of acquittal. He maintains that the government's proof failed to establish that acceptance of the social security and VA checks furthered his scheme to defraud the government. Even assuming the existence of such a scheme, the argument continues, the scheme reached fruition when the checks were cut; when they were placed in the mail, they were simply routine business mailings. As the following quote from this court's opinion in *United States v. Crockett,* 534 F.2d 589 (5th Cir.1976), indicates, this argument evidences a misunderstanding of the proof necessary to demonstrate mail fraud:

While the mailing must, as the statute requires, be "for the purpose of executing the scheme," *Kann v. United States,* 323 U.S. 88, 94, 65 S.Ct. 148, 151, 89 L.Ed. 88 (1944), "[i]t is not necessary that the scheme contemplate the use of the mails as an essential element. *United States v. Young,* 232 U.S. 155, 34 S.Ct. 303, 58 L.Ed. 548," *Pereira v. United States, supra,* [347 U.S. 1] at 8, 74 S.Ct. [358] at 362 [98 L.Ed. 435 (1954) ]; *see United States v. Maze,* 414 U.S. 395, 400, 94 S.Ct. 645, 648, 38 L.Ed.2d 603 (1974). Indeed, it is sufficient if the mailing that is caused is "a part of the execution of the fraud," *Kann v. United States, supra,* [323 U.S.] at 95, 65 S.Ct. at 151, or is "incident to an essential part of the scheme," *Pereira v. United States, supra,* [347 U.S.] at 8, 74 S.Ct. at 363; *see Parr v. United States, supra,* [363 U.S. 370] at 390, 80 S.Ct. [1171] at 1183, 4 L.Ed.2d 1277. *One "causes" the mails to be used when one "does an act with knowledge that the use of the mails will follow in the ordinary course of business, or where such use can reasonably be foreseen, even though not actually intended . . . . United States v. Kenofskey,* 243 U.S. 440, 37 S.Ct. 438, 61 L.Ed. 836." *Pereira v. United States, supra,* [347 U.S.] at 8, 74 S.Ct. at 363; *see United States v. Maze, supra,* [414 U.S.] at 399, 94 S.Ct. at 648. The things caused to be mailed may be "innocent in themselves" without effecting immunization from the mail fraud statute, as long as the mailing is " 'a step in a plot.' *Badders v. United States,* 240 U.S. 391, 394, 36 S.Ct. 367, 368, 60 L.Ed. 706." *Parr v. United States, supra,* [363 U.S.] at 390, 80 S.Ct. at 1183. Intent, in other words, "may make an otherwise innocent act criminal, if it is a step in a plot." *Badders v. United States,* 240 U.S. 391, 394, 36 S.Ct. 367, 368, 60 L.Ed. 706 (1916).

534 F.2d at 593 quoting *United States v. Green,* 494 F.2d 820, 823–24 (5th Cir.1974) (emphasis added).

The next portion of his insufficiency argument is simply an attempt to retry his case upon appeal. The jury has rejected the arguments that Murphy was not involved in the filing of false tax returns and that the 78 Handy Pak made no profit, and we decline his offer to act as an appellate jury.

The third and final part of his insufficiency argument relates to the stolen automobile counts of the indictment. Murphy contends that since the vehicle owners did not know who took their vehicles, there is insufficient evidence to connect him with these crimes. He adds that the men arrested with the vehicles did not even mention his name. Defendant was not, of course, charged with stealing the vehicles himself. He was charged with receipt and sale of a stolen vehicle, in violation of 18 U.S.C. § 2313. Proof of that offense requires two basic elements: (1) a stolen vehicle moving in or as a part of interstate commerce and (2) possession of the vehicle by the person charged with knowledge that it is stolen, and hence wrongfully in possession. *United States v. Johnson,* 489 F.2d 139 (5th Cir. 1974). The interstate commerce element is not challenged. In discussing the second element, the government points out that possession of recently stolen property, if not satisfactorily explained, allows the jury to infer guilty knowledge. *Barnes v. United States,* 412 U.S. 837, 93 S.Ct. 2357, 37 L.Ed.2d 380 (1973). Although Murphy presented a scenario consistent with his innocence, the jury was certainly entitled to believe the scenario presented by the government.

Finding no merit in any of the arguments proffered by defendant, we affirm his conviction.

AFFIRMED.