**UNITED STATES of America**

v.

**Lester V. CLINE.**

**Crim. A. No. 85–61 & 68–A.**

United States District Court, M.D. Louisiana.

Feb. 23, 1987.

---

7. Mr. Feeley is an attorney for FNBC with responsibility for investigation of the UNEXCO overdraft.

Richard B. Launey, Asst. U.S. Atty., M.D. La., Baton Rouge, La., for plaintiff.

Lester V. Cline, pro se.

JOHN V. PARKER, Chief Judge.

This matter is before the court on petitioner's motion to vacate sentence and set aside guilty pleas under 28 U.S.C. § 2255. The government opposes the motion. The motion, transcripts and record indicate that no evidentiary hearing is required on the motion. Jurisdiction is based on 28 U.S.C. § 2255.

On August 16, 1985, petitioner, Lester Cline, pled guilty to violations of the counterfeiting laws of the United States, specifically 18 U.S.C. §§ 471, 472 and 2. On September 6, 1985, petitioner, Cline, pled guilty to mail fraud, 18 U.S.C. § 1341. On October 4, 1985, Cline was sentenced to ten years on the counterfeiting offense, and five years on the mail fraud offense, with that sentence to run concurrently.

Petitioner Cline now seeks to vacate his sentences, alleging his guilty pleas were not taken in accordance with the requirements of Rule 11 of the Federal Rules of Criminal Procedure, and that the sentencing proceedings did not comply with Rule 32 of the Federal Rules of Criminal Procedure.

### Guilty Pleas—Mail Fraud

In a one count indictment, Cline was charged with scheming to defraud Independent Fire Insurance Company by burning a residence so that the homeowner could fraudulently claim insurance proceeds for an accidental fire. The indictment charges that Cline, for the purpose of executing the

scheme, caused Independent Fire Insurance Company to place in the mails a letter and check addressed to the insured.

Cline contends that his guilty plea to mail fraud should be vacated because the court failed to advise Cline of the elements of mail fraud and did not establish the requisite factual basis for the plea under Rule 11 of the Federal Rules of Criminal Procedure. Petitioner Cline also alleges that the mail fraud indictment was not read to him at the plea proceedings. The transcript of the guilty plea, page 5, indicates petitioner, through his counsel, waived the reading of the indictment. Thus, the court now turns to the Rule 11 issues raised by petitioner's motion.

■ Under Rule 11, before accepting a guilty plea, the court must determine that the defendant understands the nature of the charge to which the defendant seeks to plead guilty, and that there is a factual basis for the guilty plea. Rule 11(c) and (f) of the Federal Rules of Criminal Procedure. A review of the record indicates that the court complied with these requirements of Rule 11. At pages 5 and 6 the arraignment transcript reflects that the court asked Cline to describe in his own words what the indictment charged. Cline stated under oath: "The indictment charges me with conspiring with some other people to burn a house down for insurance purposes to collect insurance money ... due to that the check was mailed out." Thus, Cline was advised of the charge against him and indicated he understood the nature of the charge. Federal Rules of Criminal Procedure, Rule 11(c).

The court also questioned Cline about the mail fraud scheme. (Transcript pp. 9–11) and determined that the testimony of FBI Special Agent George D. Blue established the factual basis for the plea. Transcript pp. 13–16, 18–19. Cline stated under oath that the testimony of Agent Blue as to the facts of the crime, was substantially correct. Transcript p. 18. In spite of the above evidence in the record, petitioner contends that there still was not a sufficient factual basis for the plea because the transcript does not show that Cline know-ingly caused the use of the mails as stated in the mail fraud statute. Petitioner is incorrect. The record does reflect that Cline knowingly caused the mails to be used in furtherance of the fraudulent scheme under the mail fraud statute and case law.

■ Mail fraud entails (1) the scheme to defraud, and (2) the causing of the use of the mails for the purpose of executing the scheme. *Pereira v. United States*, 347 U.S. 1, 74 S.Ct. 358, 98 L.Ed. 435 (1954), *United States v. Finney*, 714 F.2d 420, 423 (5th Cir.1983).

■ There is no disputing that there existed a scheme to defraud in this case. The guilty plea record reflects that Cline and two other individuals, Ernest Graves and Tommy Lane, were engaged in a scheme to defraud Independent Fire Insurance Company. Tommy Lane requested that Lester Cline burn a house in Slidell, Louisiana, owned and insured by Ernest Graves. Transcript p. 10. Mr. Graves allegedly wanted his home burned because he was unable to sell the home at its value. Transcript p. 14. Lester Cline understood that the purpose of the fraudulent scheme was to burn the house "for insurance purposes to collect insurance money." Transcript p. 9. Thus, the receiving of the insurance check by homeowner Graves was clearly contemplated as part of the parties' scheme to defraud.

The second requirement of mail fraud, "the causing of the use of the mails for the purpose of executing the scheme," involves two inquiries. First, was the mailing for the purpose of executing the scheme, and second, did the defendant "cause" the mailing. The Fifth Circuit generally discussed these requirements in *United States v. Finney*, 714 F.2d 420, at 423 (5th Cir.1983).

While the mailing must, as the statute requires, be "for the purpose of executing the scheme, ... it is not necessary that the scheme contemplates the use of the mails as an essential element." *United States v. Maze*, 414 U.S. 395, 400, 94 S.Ct. 645, 648, 38 L.Ed.2d 603 (1974). It is sufficient if the mailing that is

caused is "a part of the execution of the fraud," *Kann v. United States,* 323 U.S. 88, 95, 65 S.Ct. 148, 151, 89 L.Ed. 88 (1944), or is "incident to an essential part of the scheme." *Pereira,* 347 U.S. at 8, 74 S.Ct. at 362. One "causes" the mail to be used when one does an act with knowledge that the use of the mails will follow in the ordinary course of business, or where such use can reasonably be foreseen, even though not actually intended. *United States v. Kenofskey,* 243 U.S. 440, 37 S.Ct. 438, 61 L.Ed. 836 (1917). A defendant need not personally handle the mail; there need only be sufficient evidence to connect him to the fraudulent scheme involving the use of the mails. *Milam v. United States,* 322 F.2d 104 (5th Cir.1963).

*United States v. Blankenship,* 746 F.2d 233, 241–42 (5th Cir.1984) further discussed this first inquiry regarding the necessary relationship between the mailing and the scheme to defraud.

We note that, although use of the mail must be an integral part of the scheme to defraud, "[t]he requisite statutory purpose exists if the alleged scheme's completion could be found to have been dependent in some way upon the information and documents passed through the mails...." *United States v. Kent,* 608 F.2d 542, 546 (5th Cir.1979), *cert. denied,* 446 U.S. 936, 100 S.Ct. 2153, 64 L.Ed.2d 788 (1980). A mailing is an integral part of a scheme to defraud if "the thing mailed was an integral part of execution of the scheme," *id.;* "[i]t is not necessary that the scheme contemplate the use of the mail [itself] as an essential element." *United States v. Murphy,* 703 F.2d 1335, 1338 (5th Cir.1983) (quoting *United States v. Crockett,* 534 F.2d 589, 593 (5th Cir.1976).

To determine whether the mailing of the insurance check was an "integral part of the scheme," one must analyze the scheme. In this case, the scope of the fraudulent scheme contemplated not only that Lester Cline would be paid for burning the Graves home, but also, that as a result of the destruction of the home, Graves would receive the insurance proceeds. Thus, the mailing of the insurance check as charged in the indictment was sufficiently related to the fraudulent scheme. Completion of the scheme to defraud was dependent upon Graves receiving the check-insurance proceeds. Accordingly, the mailing of the check had a sufficient nexus to the fraudulent scheme.

As noted earlier, the mailing must not only be part of the execution of the fraud, but it must also have been caused by the defendant. "One 'causes' the mail to be used when one does an act with knowledge that the use of the mails will follow in the ordinary course of business or where such use can reasonably be foreseen, even though not actually intended." *Finney,* 714 F.2d at 423. The Fifth Circuit and other Circuits have found that it is reasonably foreseeable in insurance fraud cases, that the mails would be used in processing claims and paying the insurance proceeds. See *United States v. Blankenship,* 746 F.2d 233 (5th Cir.1984); *United States v. Martino,* 648 F.2d 367 (5th Cir.1981), reconsidered in part 650 F.2d 651, cert. denied 456 U.S. 943, 949, 102 S.Ct. 2006, 2007, 2020, 72 L.Ed.2d 465, 474, on rehearing 681 F.2d 952; *Bannister v. United States,* 379 F.2d 750 (5th Cir.1967); *United States v. Flemino,* 691 F.2d 1263, 1265 (8th Cir.1982) and cases cited therein. In this case, it could reasonably be foreseen that the mails would be used to transmit the check-insurance proceeds from Independent Insurance Company to Graves.

Even if Cline's co-schemer, Graves, caused the mailing of the insurance check by filing his claim, Cline is still guilty of mail fraud. "It is well settled in this circuit that so long as one participant in a fraudulent scheme causes a use of the mails in execution of the fraud, all other knowing participants in the scheme are legally liable for that use of the mails." *Martino,* 648 F.2d at 397, citing *United States v. Toney,* 598 F.2d 1349, 1355 (5th Cir.1979), cert. denied, 444 U.S. 1033, 100 S.Ct. 706, 62 L.Ed. 670 (1980). "An individual participant in a scheme encompassing mail fraud will be liable for the acts of his co-schemers when such acts are within the

general scope of the scheme." *Martino*, 648 F.2d at 405. Thus, it is not necessary that Cline contemplate—know, that the mail will be used in the fraudulent scheme. *Blankenship*, 746 F.2d at 242. Nor is it necessary that Cline actually do the mailing or instruct another to use the mails in order to be guilty of mail fraud. *Martino*, 648 F.2d at 405. As long as Cline was a knowing participant in the fraudulent scheme, which Cline was, then he is legally responsible for co-schemer, Graves, causing the mails to be used. Once Cline became involved in the scheme, he could disclaim responsibility for the acts of his co-schemers only if he undertook some affirmative act of withdrawal. *Martino*, 648 F.2d at 405. There is no indication Cline sought withdrawal from the scheme.

Cline's allegations of insufficient factual basis for his guilty plea to mail fraud are without merit. Under the law, Cline knowingly caused the mails to be used for the purpose of executing the scheme to defraud the insurance company.

■ Cline also contends that his mail fraud guilty plea should be vacated as involuntary because of the government's alleged breach of secret plea bargain promises. The arraignment transcript establishes that these allegations are also without merit. At page 11 of the transcript, Cline states under oath that the plea agreement signed by him and read into the record at the proceedings was the complete plea agreement between Cline and the government and further declared that there were no side deals of any sort with the government and that no one had threatened him to make him plead guilty. His plea was voluntary.

### Counterfeiting Guilty Plea

Cline contends that his guilty plea to counterfeiting is defective on the identical grounds as those urged as to his mail fraud plea. The record reflects that petitioner's allegations are again without merit. Cline was advised of the nature of the charges against him as required by Rule 11(c) of the Federal Rules of Criminal Procedure. Transcript pp. 9–10. The record reflects

that there was a factual basis for the guilty plea. Transcript pp. 22–26. Petitioner stated also under oath, that the testimony of the Secret Service Agent establishing the factual basis of the plea was correct and that he, Cline, was guilty of counterfeiting as charged. Transcript p. 9. The record reflects that Cline stated, under oath, that he had no secret plea agreements with the government. Transcript pp. 21–22.

### Sentencing

■ The petitioner contends that his sentences should be vacated because the court did not consider petitioner's comments on the presentence report in accordance with Rule 32 of the Federal Rules of Criminal Procedure. This allegation is without merit. The court considered Cline's statements regarding his service in Vietnam and honorable discharge from the Army. Transcript p. 4. The court stated that the presentence report indicated that Cline had served in the Army and had received both an honorable discharge and an undesirable discharge from the Marine Corps. Transcript p. 5.

Cline also alleges that he did not read the presentence report. At page 3 of the sentencing transcript, Cline's counsel states that the defense had read the presentence report. Cline acknowledges he read the presentence report when he stated to the court "that nothing is indicated in the presentence report that I have served time in Vietnam and that I was honorably discharged from the Army." Transcript p. 4. The record indicates that petitioner had read the presentence report and the court properly considered petitioner's comments on the report.

The record indicates that petitioner's allegations of guilty plea and sentencing irregularities are without merit. Accordingly, petitioner's motion is hereby DENIED.