**CHUA HAN MOW, Petitioner-Appellant,**

v.

**UNITED STATES of America,
Respondent-Appellee.**

No. 83–1925.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 15, 1983.

Decided April 12, 1984.

Janet Sherman, Nasatir, Sherman & Hirsch, Los Angeles, Cal., for petitioner-appellant.

Joseph P. Russoniello, U.S. Atty., Dennis M. Nerney, Asst. U.S. Atty., Sandra Teters, San Francisco, Cal., for respondent-appellee.

Before HUG, PREGERSON, and NOR-RIS, Circuit Judges.

HUG, Circuit Judge:

Chua appeals the order denying his 28 U.S.C. § 2255 motion to vacate his prison sentence. Chua alleges various procedural errors and constitutional violations in his prosecution for violating United States laws against importation and distribution of controlled substances. We affirm.

## I

## BACKGROUND

On May 16, 1973, Chua Han Mow, a Malaysian citizen, was charged along with six others with violating United States laws against importation and distribution of controlled substances. Chua was in Malaysia at this time. Two of Chua's codefendants who were in the United States were arrested and eventually pled guilty to one count each. They each received a 10-year sentence, and they each served approximately three years before being deported.

On August 4, 1975, Chua was arrested by Malaysian authorities and incarcerated in Malaysia until October 1, 1977, pursuant to the Malaysian Emergency Ordinance of 1969. On November 2, 1977, a superseding indictment in the United States was returned against Chua and others. Chua was charged with violating 21 U.S.C. §§ 846 and 963 (Count I—conspiracy to import heroin) and 21 U.S.C. § 959 (Counts II and III—distribution of heroin). Chua was arrested by Malaysian authorities a second time on December 21, 1977. He remained incarcerated in Malaysia until he was extradited to the United States on November 28, 1979.

At his arraignment, Chua pled not guilty. On April 20, 1980, Chua withdrew his plea of not guilty and pled guilty to Counts I and III. Count II was dismissed along with a separate indictment from New York. Chua was sentenced to thirty years imprisonment—15 years each on Counts I and III to run consecutively.

A notice of appeal was filed, but then Chua requested that his appeal be dismissed. Chua sought collateral relief through a Rule 35 motion requesting the court to modify the sentence. This motion was denied.

In 1981, Chua filed *pro se* a motion in the sentencing court pursuant to 28 U.S.C. § 2255 seeking to vacate his sentence. This motion was denied. Chua's notice of appeal from this order was dismissed as untimely filed. On August 30, 1982, Chua filed a petition for writ of habeas corpus in the District Court for the District of Kansas. He raised the same issues which are raised in the current motion. That court dismissed the habeas corpus action without prejudice on the grounds that the *pro se* motion pursuant to section 2255 filed with the sentencing court had not exhausted the section 2255 remedy.

On November 22, 1982, Chua filed a second section 2255 motion in the sentencing court. The court denied the motion and this appeal followed.

## II

## SUCCESSIVE SECTION 2255 MOTIONS

Two of Chua's contentions, that his guilty plea was not voluntary and that the United States lacked jurisdiction over the

crimes, were raised by Chua in a previous section 2255 motion. When Chua raised these claims in his second section 2255 motion, the sentencing court held that the claims were barred by the court's previous determination on the merits of the claims.

■ The Supreme Court has held that a second hearing on a section 2255 motion may be denied on the basis of a previous section 2255 motion only if:

(1) the same ground presented in the subsequent application was determined adversely to the applicant on the prior application, (2) the prior determination was on the merits, and (3) the ends of justice would not be served by reaching the merits of the subsequent application.

*Sanders v. United States,* 373 U.S. 1, 15, 83 S.Ct. 1068, 1077, 10 L.Ed.2d 148 (1963). This court requires that "[i]f the district court dismisses a petition on the basis of a prior adjudication, it must make a *specific finding* that the ends of justice would not be served by reaching the merits." *Tannehill v. Fitzharris,* 451 F.2d 1322, 1324 (9th Cir.1971) (emphasis added). There is no indication that the district court in this case made this specific finding.

Although the district court erred in denying two of Chua's claims on the basis of the previous section 2255 motion without making the specific finding that the ends of justice would not be served by reaching the merits, this court must still affirm "if the motion, files, and records in the case conclusively showed the motion to be without merit." *United States v. Donn,* 661 F.2d 820, 824 (9th Cir.1981) (*citing Sanders,* 373 U.S. at 15, 83 S.Ct. at 1077).

### III

### VOLUNTARINESS OF CHUA'S GUILTY PLEA

Chua argues that his guilty plea was not voluntary and intelligent, as required by due process, because the sentencing judge failed to advise him of the consequences of his plea as required by Fed.R.Crim.P. 11. Specifically, Chua claims that he understood the maximum possible sentence he faced to be 15 years. He argues that had he known the maximum sentence was 30 years, he would not have pled guilty.

■■ The district court's findings as to the voluntariness of the guilty plea cannot be set aside unless clearly erroneous. *Stone v. Cardwell,* 620 F.2d 212, 213–214 (9th Cir.1980). The sentencing court found Chua's plea to be voluntary when the court accepted Chua's guilty plea and when the court denied Chua's first section 2255 motion. These findings are supported by the record. At the plea hearing, the following exchange took place:

THE COURT: Now, you understand that by pleading guilty to two counts, the court may sentence you to a prison sentence of up to 15 years for each count, and, in addition, to a fine of $25,000 in each count? Do you understand that to begin with?

CHUA: Yes, Your Honor. Yes.

The sentencing court's question properly advised Chua of the maximum possible penalty.

Chua argues that as a Malaysian citizen who was not adept at the English language he did not understand the meaning of "counts" or that they could be punished consecutively. The record does not support this assertion. The district court specifically found that Chua had "no language difficulty." The plea hearing transcript supports this finding. The transcript also indicates that Chua understood the meaning of "counts." In response to the court's question about any promises made to induce his guilty plea, Chua stated that he had been "promised to withdraw the plea to Count II and dismiss the indictment against me in New York." From the fact that Chua plea bargained to get a count dismissed, it can be inferred that he understood the nature of "counts."

Chua's other arguments regarding the voluntariness of his guilty plea are also without merit. Specifically, Chua argues that he did not understand that the Government had to prove specific intent to convict him. The sentencing court clearly ex-

plained to Chua that the Government had to prove that Chua took part in a scheme "knowing that it was unlawful." Chua also argues that he had a total lack of understanding of the United States Constitution. The sentencing court carefully reviewed with Chua the rights he was waiving by pleading guilty. Chua indicated that he understood these rights and that he understood that he was giving up these rights by pleading guilty. The plea hearing transcript conclusively shows that Chua's claim that his plea was involuntary is without merit.

Chua also alleges ineffective assistance of counsel, but this contention is essentially indistinguishable from his assertion that he was not properly informed of the maximum possible sentence to the charges he faced. As discussed earlier, the sentencing court adequately informed Chua of the maximum possible sentence. Furthermore, the court asked Chua at the plea hearing if he was satisfied with his attorney and his attorney's handling of the case. Chua replied affirmatively. Chua also acknowledged that he understood that the length of the prison sentence was entirely up to the judge. "These solemn declarations made in open court carry a strong presumption of verity." *United States v. Rivera-Ramirez,* 715 F.2d 453, 458 (9th Cir.1983).

## IV

### JURISDICTION

#### A. Extraterritorial Jurisdiction

■ Chua argues that the United States lacked subject-matter jurisdiction to prosecute him because all the unlawful acts he committed were done in Malaysia. We disagree. There is no constitutional bar to the extraterritorial application of penal laws. *United States v. King,* 552 F.2d 833, 850 (9th Cir.1976), *cert. denied,* 430 U.S. 966, 97 S.Ct. 1646, 52 L.Ed.2d 357 (1977). Although courts have been reluctant to give extraterritorial effect to penal statutes, they have done so when congressional intent to give extraterritorial effect is clear. *United States v. Bowman,* 260 U.S.

94, 98, 43 S.Ct. 39, 41, 67 L.Ed. 149 (1922). Section 959 specifically states that it is intended to reach prohibited acts committed outside the territorial jurisdiction of the United States. Sections 846 and 963, the statutory basis for the conspiracy count in this case, do not specifically provide for extraterritorial application. This court, however, has regularly inferred extraterritorial reach of conspiracy statutes on the basis of a finding that the underlying substantive statutes reach extraterritorial offenses. *E.g., United States v. Cotten,* 471 F.2d 744, 750 (9th Cir.), *cert. denied,* 411 U.S. 936, 93 S.Ct. 1913, 36 L.Ed.2d 396 (1973); *Brulay v. United States,* 383 F.2d 345, 350 (9th Cir.), *cert. denied,* 389 U.S. 986, 88 S.Ct. 469, 19 L.Ed.2d 478 (1967). *See also United States v. Layton,* 509 F.Supp. 212, 225 (N.D.Cal.), *appeal dismissed,* 645 F.2d 681 (9th Cir.1981). Thus, the inference that Congress intended sections 846 and 963 to have extraterritorial application is readily made.

Before giving extraterritorial effect to penal statutes, courts have considered whether international law permits the exercise of jurisdiction. *E.g., United States v. Schmucker-Bula,* 609 F.2d 399, 402–403 (7th Cir.1980); *King,* 552 F.2d at 851; *Rivard v. United States,* 375 F.2d 882, 885 (5th Cir.1967).

International law recognizes five general principles whereby a sovereign may exercise this prescriptive jurisdiction: (1) territorial, wherein jurisdiction is based on the place where the offense is committed; (2) national, wherein jurisdiction is based on the nationality or national character of the offender; (3) protective, wherein jurisdiction is based on whether the national interest is injured; (4) universal, which amounts to physical custody of the offender; and (5) passive personal, wherein jurisdiction is based on the nationality or national character of the victim.

*United States v. Smith,* 680 F.2d 255, 257 (1st Cir.1982) (footnote omitted). Many cases involve the prosecution of United States citizens for acts committed abroad,

but extraterritorial authority is not limited to cases involving the nationality principle. Extraterritorial application of penal laws may be justified under any one of the five principles of extraterritorial authority. *King,* 552 F.2d at 851.

■ In *King,* this court upheld the authority of the United States to prosecute United States citizens for distribution of heroin in violation of section 959, the same statute involved in the present case. The distribution occurred in Japan, but the heroin was intended for importation into the United States. The court noted that the nationality principle applied because the appellants were United States citizens. However, the court stated that "appellants' prosecution for violating § 959 could also be justified under the territorial principle, since American courts have treated that as an 'objective' territorial principle." *Id.* at 851. Under the "objective" territorial principle,

> Acts done outside a jurisdiction, but intended to produce and producing detrimental effects within it, justify a State in punishing the cause of the harm as if he had been present at the effect, if the State should succeed in getting him within its power.

*Strassheim v. Daily,* 221 U.S. 280, 285, 31 S.Ct. 558, 560, 55 L.Ed. 735 (1911). This rule applies to nations as well as states. *Rocha v. United States,* 288 F.2d 545, 549 (9th Cir.1961). In the present case, Chua intended to create a detrimental effect in the United States and committed acts which resulted in such an effect when the heroin unlawfully entered the country. Chua's section 959 prosecution is therefore justified under the "objective" territorial principle. *See Rivard,* 375 F.2d at 887.

Other courts have relied on the protective principle to justify jurisdiction over extraterritorial crimes involving the unlawful importation of controlled substances. *See United States v. Newball,* 524 F.Supp. 715, 720 (E.D.N.Y.1981); *United States v. Egan,* 501 F.Supp. 1252, 1258 (S.D.N.Y. 1980). Noting that drug smuggling compromises a sovereign's control of its own borders, the Seventh Circuit has suggested that it might uphold extraterritorial criminal jurisdiction over alien drug smugglers even if the territorial principle did not apply. *Schmucker-Bula,* 609 F.2d at 403. We are persuaded that the protective principle also justifies Chua's section 959 prosecution.

■ The objective territorial principle and the protective principle are equally applicable to the conspiracy count. Furthermore, the Supreme Court has held that extraterritorial jurisdiction over aliens exists when a conspiracy had for its object crime in the United States and overt acts were committed in the United States by co-conspirators. *Ford v. United States,* 273 U.S. 593, 624, 47 S.Ct. 531, 541, 71 L.Ed. 793 (1927). *See also United States v. Winter,* 509 F.2d 975, 982 (5th Cir.), *cert. denied,* 423 U.S. 825, 96 S.Ct. 39, 46 L.Ed.2d 41 (1975). In the present case, Chua's co-conspirators committed acts in furtherance of the conspiracy inside the United States. Co-conspirator Tang was arrested at the San Francisco Airport as he attempted to retrieve suitcases containing heroin. Therefore, the United States does have jurisdiction to prosecute Chua.

### B. The Single Convention on Narcotic Drugs

Chua argues that the 1970 Drug Act under which he was convicted and sentenced incorporates the Single Convention on Narcotic Drugs, which limits the extraterritorial jurisdiction of the United States. Chua points to Article 36(a)(2)(iv) of the Single Convention which states:

> (iv) Serious offenses heretofore referred to committed either by nationals or by foreigners shall be prosecuted by the Party in whose territory the offense was committed, or by the Party in whose territory the offender is found *if extradition is not acceptable* in conformity with the law of the Party to which application is made, and if such offender has not

already been prosecuted and judgment given.

18 U.S.T. 1407, 1425 (emphasis added).

■ Chua cites no authority supporting the proposition that the Single Convention limits the extraterritorial jurisdiction of the United States. The plain language of the cited provision does not limit the jurisdiction of the United States. The only effect of the provision is that Malaysia would have been required to prosecute Chua if extradition had not been acceptable to Malaysia. The provision is not applicable in this case because extradition was acceptable to Malaysia.

## V

### DOUBLE JEOPARDY

Chua argues that he was convicted in Malaysia for the same offense as in the instant case and that the fifth amendment bar against double jeopardy was thereby violated. Chua also argues that the Single Convention proscribes a second prosecution in the United States. These arguments are frivolous.

■ This court rejected an identical double jeopardy argument in *United States v. Richardson*, 580 F.2d 946 (9th Cir.1978) (per curiam), *cert. denied*, 439 U.S. 1068, 99 S.Ct. 835, 59 L.Ed.2d 33 (1979). This court clearly held that "prosecution by a foreign sovereign does not preclude the United States from bringing criminal charges." *Id.* at 947. The court also held that "the Convention neither affects the sovereignty of member nations nor embodies an agreement to refrain from prosecuting a defendant who has previously been tried by another signatory nation." *Id.* Chua's attempts to distinguish *Richardson* are unpersuasive.

## VI

### CREDIT FOR TIME SERVED

Chua claims that the Bureau of Prisons has improperly denied him credit for the time served in Malaysia from August 4, 1975 to October 1, 1977. The Bureau based its decision on a telegram from the State Department which stated Chua's initial arrest was "in no way related to the offense for which Chua was arrested and deported." The Government contends this issue is not properly before this court because Chua has not exhausted his administrative remedies.

■ Under 18 U.S.C. § 3568, "[t]he Attorney General shall give any such person credit toward service of his sentence for any days spent in custody in connection with the offense or acts for which sentence was imposed." This court has held that "[i]t is the administrative responsibility of the Attorney General, the Department of Justice, and the Bureau of Prisons to compute sentences and apply credit where it is due. It is not the province of the sentencing court." *United States v. Clayton*, 588 F.2d 1288, 1292 (9th Cir.1979). It is only when a prisoner has exhausted his administrative remedies that he becomes entitled to litigate the matter in the district court. *United States v. Mathis*, 689 F.2d 1364, 1365 (11th Cir.1982).

This court recently explained why a petitioner must exhaust his administrative remedies before filing for collateral relief:

> The requirement of exhaustion of remedies will aid judicial review by allowing the appropriate development of a factual record in an expert forum; conserve the court's time because of the possibility that the relief applied for may be granted at the administrative level; and allow the administrative agency an opportunity to correct errors occurring in the course of administrative proceedings.

*Ruviwat v. Smith*, 701 F.2d 844, 845 (9th Cir.1983) (per curiam).

■ In this case, Chua has not exhausted his administrative remedies. The Bureau of Prisons has established an Administrative Remedy Procedure through which an inmate can seek formal review of a complaint which relates to any aspect of his imprisonment. 28 C.F.R. §§ 542.10–542.16 (1981). This is exactly the type of case in which exhaustion of administrative reme-

**1314**

dies should be required. There has not been the development of a factual record which would enable this court to review the Bureau's decision. Chua himself states that there are disputed factual assertions when he argues that there should have been an evidentiary hearing in the court below. The district court properly refused to consider this issue.

## VII

### CONCLUSION

Under 28 U.S.C. § 2255, no evidentiary hearing need be held if the motion, files and records "conclusively show that the prisoner is entitled to no relief." Since the motion, files and record do conclusively show that Chua is entitled to no relief, the district court properly denied Chua's section 2255 motion without holding an evidentiary hearing.

AFFIRMED.