**UNITED STATES of America, Plaintiff,**

v.

**Amos E. HODGE, Defendant.**

**No. CR83–183A.**

United States District Court,
N.D. Ohio, E.D.

Dec. 7, 1987.

Ralph Cascarilla, Christian H. Stickan, Asst. U.S. Attys., Cleveland, Ohio, for plaintiff.

Alexander E. Teodosio, Akron, Ohio, William T. Doyle, Cleveland, Ohio, for defendant.

## ORDER DENYING MOTION FOR JAIL TIME CREDIT AND MOTION TO CORRECT SENTENCE

KRENZLER, District Judge.

On July 19, 1983, pursuant to a plea agreement that was reduced to writing and filed with the Court, defendant, Amos E. Hodge, entered a plea of guilty to an information charging him with two counts of mail fraud in violation of 18 U.S.C. § 1341, and two counts of wire fraud in violation of 18 U.S.C. § 1343. He was thereupon sentenced to pay a fine of $1,000.00 and to serve five (5) years in the custody of the Attorney General on each count, said sentences to be served consecutively.

Presently pending before the Court are two motions. The first of these is a motion filed by the defendant *pro se* seeking jail time credit for time he alleges he spent in custody prior to sentencing. The second motion is a motion pursuant to Fed.R. Crim.P. 35(a) to correct an illegal sentence. This motion has been filed on defendant's behalf by retained counsel. The Court will address each of these motions separately.

### THE MOTION FOR JAIL TIME CREDIT

In his *pro se* motion for jail time credit, defendant asks this Court to order that he be given credit for 85 days he alleges he spent in presentence custody between April 27, 1983 and July 20, 1983.

This motion constitutes defendant's second request for the same relief. On October 17, 1983, defendant filed a similar motion, styled: "Motion to Correct/Reduce Sentence," in which, *inter alia*, he sought jail time credit for the same 85 days. That motion was denied by marginal entry, dated December 17, 1983, on the ground that the Court did not have jurisdiction to grant the relief sought. For the reasons that follow, the Court still does not have jurisdiction to grant the relief defendant seeks and, therefore, defendant's second motion must be denied, both because the Court lacks jurisdiction and because the defendant is barred under the doctrine of *res judicata* from attempting to relitigate the jurisdictional issue.[1]

The crediting of jail time to a prisoner's sentence is a matter governed entirely by statute. At the time defendant was sentenced, such matters were governed by 18 U.S.C. § 3568. Basically, § 3568 provided that a prisoner's sentence "commence[s] to run from the date [the prisoner] is received at the penitentiary ... for service of his sentence." *Id.* Section 3568 also contained the important proviso that "[t]he Attorney General shall give [the prisoner] credit toward service of his sentence for any days spent in custody in connection with the offense or acts for which sentence was imposed."

Effective November 1, 1986, § 3568 was repealed and replaced by 18 U.S.C. § 3585. Although § 3585 does prescribe a slightly different method for determining the commencement date of a sentence and computing jail time, the new statute is similar to its predecessor in requiring that these computations be performed by the Department of Justice in the first instance. As stated in *United States v. Clayton*, 588 F.2d 1288 (9th Cir.1979), "[i]t is the administrative responsibility of the Attorney General, the Department of Justice, and the Bureau of Prisons to compute sentences and apply

---

1. The doctrine of *res judicata* not only bars relitigation of matters relating to the merits of a controversy, it also extends to and bars relitigation of jurisdictional issues. *See, e.g., Fehlha-* *ber v. Fehlhaber,* 669 F.2d 990, 994 (5th Cir. 1982). *See generally,* J. Moore, 5 *Moore's Federal Practice* ¶ 0.405[5] at 223–24.

credit where it is due. It is not the province of the sentencing court." *Id.* at 1292.

This does not mean that district courts never have jurisdiction over such matters. To the contrary, if the Department of Justice improperly refuses to give jail time credit where it is due, its refusal may be reviewed by habeas corpus, *see, e.g., Soyka v. Alldredge,* 481 F.2d 303, 304–05 (3d Cir. 1973), or by mandamus, *see Davis v. Attorney General,* 425 F.2d 238 (5th Cir.1970). However, there are limitations upon a court's jurisdiction to exercise such review.

First, the prisoner must exhaust his administrative remedies. Pursuant to 28 C.F.R. §§ 542.10–542.16, "[t]he Bureau of Prisons has established an Administrative Remedy procedure through which an inmate may seek formal review of a complaint which relates to any aspect of his imprisonment...." *Id.,* § 542.10. This procedure permits the prisoner to formally petition the warden of the institution where he is incarcerated for redress, and if dissatisfied with the warden's response, to appeal the warden's decision to the Regional Director of the Bureau of Prisons, and ultimately to the Office of General Counsel. *See* 28 C.F.R. §§ 542.13(b), 542.15. "It is only when a prisoner has exhausted [these] administrative remedies that he becomes entitled to litigate the matter in district court." *Chau Han Mow v. United States,* 730 F.2d 1308, 1313 (9th Cir.1984); *accord, United States v. Mathis,* 689 F.2d 1364, 1365 (11th Cir.1982).

The exhaustion requirement is far from an empty ritual, and serves several important functions. As stated in *Ruviwat v. Smith,* 701 F.2d 844 (9th Cir.1983):

> The requirement of exhaustion of remedies ... aid[s] judicial review by allowing the appropriate development of a factual record in an expert forum; conserve[s] the court's time because of the possibility that the relief applied for may be granted at the administrative level; and allow[s] the administrative agency an opportunity to correct errors occurring in the course of administrative proceedings.

*Id.* at 845. *See also Cua Han Mow,* 730 F.2d at 1313.

Assuming that the prisoner has exhausted his administrative remedies, is still dissatisfied, and wishes to seek judicial review, he may do so. However, he must invoke the proper remedy. Although some courts have suggested that a prisoner may seek a writ of mandamus pursuant to 28 U.S.C. § 1361 to compel the Attorney General to give appropriate credit for jail time, *see, e.g., Davis v. Attorney General,* 425 F.2d at 240, most courts have held that habeas corpus pursuant to 28 U.S.C. § 2241(c)(1), is the proper remedy. *United States v. Giddings,* 740 F.2d 770, 772 (9th Cir.1984); *United States v. Brown,* 753 F.2d 455 (5th Cir.1985); *Soyka v. Alldredge,* 481 F.2d 303 (3d Cir.1973); *Commulada v. Pickett,* 455 F.2d 230, 232 (7th Cir.1972); *United States v. Lynch,* 647 F.Supp. 1293 (D.S.C.1986); *United States v. Crawford,* 477 F.Supp. 266 (M.D.Tenn. 1979). In any event, because a request for sentence credit is directed toward the execution of the sentence, rather than its validity, neither Rule 35 of the Federal Rules of Criminal Procedure, nor 28 U.S.C. § 2255, may be utilized. *United States v. Giddings,* 740 F.2d at 771–72; *Soyka v. Alldredge,* 481 F.2d at 304–06; *Lee v. United States,* 400 F.2d 185, 188 (9th Cir.1968); *United States v. Brown,* 753 F.2d at 756.

All of this has significance because the remedy will dictate the forum in which to file. For example, if Rule 35 or § 2255 could be used to present jail time claims, the prisoner would be required to file in the sentencing forum since the sentencing court is the only court with jurisdiction to hear motions under Rule 35 or § 2255. However, since neither Rule 35 nor § 2255 is an appropriate remedy, an entirely different result is indicated. Thus, if the prisoner selects mandamus as the vehicle for presenting his jail time claim, he will have to file in a forum where he can satisfy the venue requirements of 28 U.S.C. § 1391, and can also perfect service of process over the named defendant. *See* Fed.R.Civ.P. 4. Likewise, if he selects habeas corpus as the vehicle for presenting his claim, he will have to file in a district having personal jurisdiction over the warden of the institu-

tion where he is incarcerated, since habeas, by its very nature, is a writ that is directed toward, and spends its force against, the prisoner's custodian. *Braden v. 30th Judicial Circuit Court of Kentucky*, 410 U.S. 484, 494–95, 93 S.Ct. 1123, 1129–30, 35 L.Ed.2d 443 (1973).

In the instant case, there is no evidence that the defendant has exhausted his administrative remedies pursuant to 28 C.F.R. §§ 542.10–542.16 and, thus, his claim is premature. Moreover, even if defendant had exhausted his administrative remedies, this would not be the proper court to hear defendant's claim since it appears that neither the venue nor the jurisdictional requirements of either mandamus or habeas corpus could be satisfied in this district.

For these reasons, defendant's request for jail time credit must be dismissed. Since this is a dismissal for lack of jurisdiction, rather than on the merits, defendant is, of course, free to present his claim for jail time credit to the Bureau of Prisons and, if dissatisfied with the result obtained there, he may seek review by way of mandamus or habeas corpus in an appropriate forum.

## THE MOTION TO CORRECT SENTENCE

In his motion to correct sentence, defendant raises four separate claims. He claims that (1) his consecutive sentences violate the double jeopardy provision of the Constitution, (2) his sentence violates equal protection, (3) the acts underlying Counts III and IV of the information were "too remote" from the scheme to defraud to support his convictions for mail fraud and wire fraud, respectively, and (4) allegations in the information to the effect that the scheme to defraud generated "approximately $500,000.00" are incorrect. For the reasons that follow, none of these claims has merit.

### 1. *The Double Jeopardy Claim*

■ Defendant contends that it was impermissible for the Court to impose consecutive sentences on each of the four counts of the information. He argues that the information alleged only one scheme to defraud, and that the separate mailings and wire communications which formed the basis of the information's four individual counts were "an integral part of the woven fabric of the singular fraud." As a result, he argues, there was only one crime, and that "[t]o ... cause the [m]ovant to suffer four times for what was in essence a singular criminal act offends ... the double jeopardy clause of the Constitution."

One of the primary aspects of the double jeopardy clause is that it protects against being twice punished for the same offense. As stated in *Brown v. Ohio*, 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977):

> The Double Jeopardy Clause "protects ... against multiple punishments for the same offense." ... Where consecutive sentences are imposed at a single criminal trial, the role of the constitutional guarantee is limited to assuring that the court does not exceed its legislative authorization by imposing multiple punishments for the same offense.

*Id.* at 165, 97 S.Ct. at 2225, citations omitted. Thus, if the information in this case charged only one offense, as defendant now contends, the consecutive sentences he received would, indeed, violate the double jeopardy clause. On the other hand, if the information charged four separate offenses, separate sentences for each of those offenses would not be impermissible. The critical question, therefore, is whether separate mailings in furtherance of the same scheme to defraud constitute separate offenses under the mail fraud statute, 18 U.S.C. § 1341.

This question was long ago answered in the affirmative by *Badders v. United States*, 240 U.S. 391, 36 S.Ct. 367, 60 L.Ed. 706 (1916), where the Supreme Court, in construing the predecessor to 18 U.S.C. § 1341, stated that "there is no doubt that the law may make each putting of a letter into the post office a separate offense." *Id.* at 394, 36 S.Ct. at 368. Thus, claims identical to the one put forth by the instant defendant have uniformly been rejected by the courts. For example, in *United States*

*v. Anderson,* 466 F.2d 1360 (8th Cir.1972), the court stated:

> The Andersons urge that because their convictions rest upon two counts of mail fraud which involved the same property and were part of a single scheme, there was a single offense and consecutive sentences were impermissible. However, their argument disregards the principle that the gist of the offense, under 18 U.S.C. § 1341, is the insertion of the matter intended to affect the scheme to defraud in the mail. Thus, each mailing in violation of the mail fraud statute is a separate offense.

*Id.* at 1361, citing *Badders* and *Atkinson v. United States,* 344 F.2d 97, 98 (8th Cir. 1965), *cert. denied,* 382 U.S. 867, 86 S.Ct. 141, 15 L.Ed.2d 106 (1966). *Accord, United States v. Saxton,* 691 F.2d 712, 714–15 (5th Cir.1982) (separate mailings authorize separate sentences, even if animated by the same *mens rea* in furtherance of the same scheme to defraud); *United States v. Ledesma,* 632 F.2d 670, 679 (7th Cir.), *cert. denied,* 444 U.S. 998, 101 S.Ct. 539, 66 L.Ed.2d 296 (1980) (separate counts proper for separate mailings); *United States v. Wolf,* 561 F.2d 1376, 1378 (10th Cir.1977) (same; separate mailings support separate counts); *United States v. Jones,* 648 F.Supp. 241, 243 (S.D.N.Y.1986) (each mailing constitutes separate offense for which consecutive sentences may be imposed); *United States v. Clevenger,* 458 F.Supp. 354, 359 (E.D.Tenn.1978) (separate mailings support separate counts).

The same result obtains under the wire fraud statute, 18 U.S.C. § 1343. Each wire communication constitutes a separate offense and is separately punishable, even if made in furtherance of the same scheme to defraud. *See, e.g., United States v. Benmuhar,* 658 F.2d 14, 21 (1st Cir.), *cert. denied,* 457 U.S. 1117, 102 S.Ct. 2927, 73 L.Ed.2d 1328 (1981); *United States v. Calvert,* 523 F.2d 895, 914 (8th Cir.1975), *cert. denied,* 424 U.S. 911, 96 S.Ct. 1106, 47 L.Ed.2d 314 (1976); *United States v. Henderson,* 425 F.2d 134, 138 (5th Cir. 1970); *United States v. Meadows,* 540 F.Supp. 490, 498 (S.D.N.Y.1982).

In light of the foregoing, defendant's claim that the information alleged but a single offense is without merit. Each separate mailing and each separate wire communication constituted a separate offense and, therefore, consecutive sentences were authorized.

### 2. *The Equal Protection Claim*

■ Defendant also contends that, because he received a longer sentence than that imposed upon his co-participant in the scheme to defraud, his sentence violates equal protection. This contention is without merit.

In order to implicate the equal protection clause, defendant must allege and prove that he was given a greater sentence because of racial bias or some other class-based, invidiously discriminatory animus. *See Griffen v. Breckenridge,* 403 U.S. 88, 102, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971); *Yick Wo v. Hopkins,* 118 U.S. 356, 6 S.Ct. 1064, 30 L.Ed. 220 (1886). No such claim is made in this case. Furthermore, there is no rule that co-participants in the same criminal venture must receive identical sentences, *see, e.g., United States v. Maples,* 501 F.2d 985, 986–87 (4th Cir.1974), and so long as a sentence is within the limitations set forth in the statute under which it is imposed, it is not subject to review. *Dorszynski v. United States,* 418 U.S. 424, 432, 94 S.Ct. 3042, 3047, 41 L.Ed. 2d 855 (1974).

### 3. *The Claim That the Acts Charged in Counts III and IV of the Information Were "Too Remote"*

■ Defendant contends that the acts charged in Counts III and IV of the information were "too remote" from the scheme to defraud to support charges of mail fraud and wire fraud, respectively. He contends that the mailing which forms the basis of Count III was his payment of "an installment on a lease that was clearly due the victim" of the fraud, Mobil Oil Corporation, and that the victim requested and benefitted from this payment. Similarly, he contends that the charge embodied in Count IV of the information is based upon a tele-

gram sent by Mobil Oil Corporation advising a brokerage firm (Merrill, Lynch) that it was extending defendant's lease. He argues that this telegram was "essentially a confirmation of the receipt of the lease payment" referred to in Count III of the information, and that neither the mailing referred to in Count III nor the telegram referred to in Count IV can be considered criminal, because they were "too remote" from the scheme to defraud. In support of this argument, he relies upon *United States v. Maze*, 414 U.S. 395, 94 S.Ct. 645, 38 L.Ed.2d 603 (1974).

Even if defendant's contentions did have arguable merit, he is foreclosed from asserting them at this time by reason of the fact that he pled guilty to the charges. It is well settled that a plea of guilty admits all material facts alleged in the charge, *e.g.*, *McCarthy v. United States*, 394 U.S. 459, 466, 89 S.Ct. 1166, 1171, 22 L.Ed.2d 418 (1969); *United States v. Parker*, 292 F.2d 2, 4 (6th Cir.1961), and constitutes a waiver of all non-jurisdictional defects. *E.g.*, *Kowalak v. United States*, 645 F.2d 534, 537 (6th Cir.1981); *Johnson v. Petrovsky*, 626 F.2d 72, 73 (8th Cir.1980). The contentions the defendant makes now do not rise to the level of a jurisdictional defect. Construing defendant's allegations in the light most favorable to him, he at most alleges facts which, had he gone to trial, may have constituted some sort of factual defense to the charges. However, by pleading guilty, defendant admitted all material facts alleged in the information. Having done so, he may not now seek to relitigate those facts by attacking his sentence under Rule 35. This is especially so, since defendant's plea was entered pursuant to a plea bargain whereby the government agreed to abandon other criminal charges it could have brought against the defendant.

Furthermore, if this Court were to consider the merits of defendant's claims, it would be constrained to overrule them. *United States v. Maze*, upon which defendant predicates his "remoteness" argument, is clearly distinguishable. In *Maze*, the defendant used another person's bank credit card at out-of-state motels, thereby causing the mailing of sales invoices by the motels to the bank, and by the bank to the credit card owner. The Supreme Court held that these mailings could not form the basis for a mail fraud conviction under 18 U.S.C. § 1341 because the scheme to defraud had already "reached fruition when [the defendant] checked out of the motels," *id.*, 414 U.S. at 402, 94 S.Ct. at 649, meaning that it could not "be said that the mailings in question were for the purpose of executing the scheme, as the statute requires." *Id.* at 400, 94 S.Ct. at 648, *quoting Kann v. United States*, 323 U.S. 88, 94, 65 S.Ct. 148, 151, 89 L.Ed. 88 (1944).

Here, by contrast, the scheme to defraud had not come to fruition when the mailing referred to in Count III of the information, and the telegram referred to in Count IV, were sent. For example, defendant's mailing of the lease payment as charged in Count III was designed to lull the victim into a false sense of security, and thus was clearly part of the scheme to defraud. *See United States v. Maze*, 414 U.S. at 403, 94 S.Ct. at 650. Thus, even if this Court were to reach the merits of defendant's claims, it would be constrained to deny them.

### 4. *Defendant's Claim That the Amount Alleged in the Information is Inaccurate*

Defendant's final claim is that the information inaccurately alleged that the amount involved in the fraudulent scheme was in excess of $500,000.00 and that "there exists in the possession of the U.S. Attorney evidence clearly indicating that the value of the property at issue was not in excess of $500,000.00...." Defendant fails to specify exactly what evidence the United States Attorney possesses suggesting the inaccuracy of the $500,000.00 figure, nor does he suggest how this alleged inaccuracy prejudices him. Although the defendant suggests that the alleged inaccuracy in the information could "have significant practical bearing on his parole eligibility," he admits that the Parole Commission has already classified his offense behavior as a "Category Five" offense, "which category reflects the relevant value as less than $500,000.00." Thus, even if the

amount alleged in the information were inaccurate as defendant now claims, it is difficult to perceive how he is in any way prejudiced.

In any event, the defendant's voluntary plea of guilty once again bars him from attacking the accuracy of the amount alleged in the information. Under the authorities cited above, defendant's plea constitutes an admission of all material facts alleged in the charge, and those facts are not open to cavil now.

## CONCLUSION

For the reasons set forth above, defendant's motion for jail time credit is denied, without prejudice, to his right to reassert his claim in an appropriate forum after exhausting administrative remedies. Defendant's Rule 35(a) motion to correct sentence is denied, in all respects, with prejudice.

IT IS SO ORDERED.