**Hipolito CRUZ, Petitioner,**

v.

**J.J. CLARK, Warden, et al.,
Respondents.**

**Civ. A. No. 87–0872–AM.**

United States District Court,
E.D. Virginia,
Alexandria Division.

May 27, 1988.

Hipolito Cruz, pro se.

Paula P. Newett, Asst. U.S. Atty., Alexandria, Va., for respondents.

## MEMORANDUM OPINION

CACHERIS, District Judge.

The issue in this case is whether the application of parole guidelines adopted after an offense has been committed denies a federal prisoner the protection of the *ex post facto* clause, U.S. Const. art. 1, § 9, cl. 3. The respondents filed an opposition to petitioner's application for a writ of habeas corpus seeking dismissal of the petition on the grounds that petitioner's failure to exhaust his administrative remedies requires dismissal or, in the alternative, that the parole guidelines do not have the force and effect of law and are therefore not subject to the *ex post facto* prohibition. For the reasons set forth below, the court finds that the United States Parole Guidelines are not subject to the prohibition against *ex post facto* laws and retroactive application

of guidelines adopted after an offense is committed is constitutional.

## I. *Background.*

Petitioner Hipolito Cruz brings suit under 28 U.S.C. § 2241 seeking a writ of habeas corpus on the grounds that by applying parole guidelines adopted subsequent to the commission of the offenses for which he was convicted and sentenced, the prohibition against *ex post facto* laws has been violated. Petitioner asserts that under the parole guidelines in effect at the time he committed the offenses, his presumptive parole date would have required him to serve less time than he is required to serve by application of the parole guidelines adopted after the crimes were committed.

On October 5, 1983, petitioner pled guilty to one count of conspiracy to possess with intent to distribute in excess of 1000 pounds of marijuana. Petitioner was sentenced to serve a ten year term of incarceration on February 24, 1984 by the United States District Court for the Southern District of Florida. On January 18, 1984, petitioner pled guilty to an additional count of conspiracy to import in excess of 1000 pounds of marijuana. On March 8, 1984, petitioner was sentenced to a term of incarceration of five years to run concurrently with the ten year sentence previously imposed. Finally, on June 21, 1984, petitioner was sentenced on a guilty plea entered on October 5, 1983 to one count of conspiracy to import a minimum of 150 kilograms of cocaine. The ten year sentence of incarceration imposed for this conviction was ordered to run concurrently with the two terms imposed previously.

For the three separate convictions, petitioner is sentenced to serve a total federal sentence of 10 years, 3 months, 28 days. He has been in continuous custody in relation to these offenses since March 30, 1983. The last date on which any act was committed in furtherance of any of the three conspiracies is July 8, 1982. During the time these offenses were committed, the 1980 severity ratings and guidelines of the United States Parole Commission were in effect. These guidelines were subsequently revised in 1984.

On April 10, 1985, the petitioner was provided his initial parole hearing. The Parole Commission examiner panel assessed petitioner's case under the parole guidelines in effect at the time of the hearing, the 1984 guidelines. Based on these provisions, the panel determined petitioner's offense behavior to be graded category 8. Combined with his salient factor score of 8, petitioner's parole guideline range required him to serve 100 or more months of incarceration before parole. Cruz was notified that he could expect to serve no more than 84 months prior to mandatory release on his federal sentence. The examiner panel recommended that Cruz be denied parole. Upon review by the regional office, the Regional Commissioner adopted the recommendation of the examiner panel. Petitioner subsequently filed an administrative appeal to the National Appeals Board. The decision was affirmed.

On May 8, 1987, petitioner was afforded a statutory interim hearing[1] to determine whether any developments occurred since the initial hearing to justify a change in his presumptive parole date. The examiner panel recommended that no change be made from the prior decision to deny parole. The regional commissioner again adopted the recommendation and ordered petitioner to serve his sentence without parole to the expiration of his term. Petitioner was advised of his right to file an administrative appeal; a right he did not invoke. The respondents now seek dismissal of this petition on the grounds that petitioner's failure to appeal this last Parole Commission decision precludes his ability to seek review in this court. Alternatively, the respondents assert that the parole guidelines are not subject to *ex post facto* analysis and that therefore retroactive application of the revised guidelines does not violate petitioner's constitutional rights.

## II. *Exhaustion of Administrative Remedies.*

■ Challenges to Parole Commission decisions must be brought under 28 U.S.C.

---

1. 28 C.F.R. § 2.14(a).

§ 2241 in the district court with jurisdiction over the prisoner or his custodian. *Braden v. 30th Judicial Circuit Court of Kentucky,* 410 U.S. 484, 93 S.Ct. 1123, 35 L.Ed. 2d 443 (1973); *Andrino v. United States Bd. of Parole,* 550 F.2d 519 (9th Cir.1977). The petition indicates that Cruz is incarcerated at the Federal Correctional Institution located at Petersburg, Virginia. For federal habeas corpus purposes, Cruz's custodian is the Warden of that institution. *See Billiteri v. United States Bd. of Parole,* 541 F.2d 938, 948 (2nd Cir.1976). As Petersburg, Virginia lies within the Eastern District of Virginia, petitioner's application for a writ of habeas corpus is properly before the court.

■ Judicial review of a claim challenging a Parole Commission decision is available under 28 U.S.C. § 2241 after exhaustion of administrative remedies. *Chua Han Mow v. United States,* 730 F.2d 1308, 1313 (9th Cir.1984), *cert. denied,* 470 U.S. 1031, 105 S.Ct. 1403, 84 L.Ed.2d 790 (1985). The Parole Commission has established an administrative remedy procedure through which an inmate can seek formal review of any decision to grant, rescind, deny or revoke parole. *See* 28 C.F.R. § 2.26 (1987). Requiring inmates to use this administrative remedy aids judicial review in several ways. First, requiring exhaustion allows for the development of a complete factual record; second, exhaustion permits the administrative agency an opportunity to correct errors occurring in the course of its own proceedings; and finally, requiring inmates to seek relief through the administrative remedy procedure conserves the court's time by foreclosing the possibility

that the relief applied for may be granted at the administrative level. *Chua Han Mow,* 730 F.2d at 1313 (citing *Ruviwat v. Smith,* 701 F.2d 844, 845 (9th Cir.1983) (*per curiam* )). Allowing the Parole Commission the first opportunity to address petitioner's challenge to the application of the parole guidelines is a prerequisite to bringing an action in this court under § 2241. *See United States v. Legrano,* 659 F.2d 17, 18 (4th Cir.1981).

■ Contrary to respondents' assertions, petitioner has exhausted his administrative remedies with respect to the claim that the *ex post facto* clause prohibits application of the revised guidelines to his case. Petitioner filed an administrative appeal to the National Appeals Board following the initial decision of the regional commissioner to deny parole. The National Appeals Board affirmed the commissioner's decision based on "the commission's position that the *ex post facto* clause of the Constitution does not apply to paroling policy guidelines." (Respondents' Exhibit D). As this decision is the exact issue raised in this petition, the court believes petitioner has satisfied the requirement that he first exhaust his administrative remedies. His failure to later appeal the decision rendered at his statutory interim hearing does not present a bar to this case as the Commission had already been presented with the *ex post facto* claim.[2] Granting judgment to the respondents on the grounds that petitioner's failure to reassert his claim after each parole hearing would result in a triumph of form over substance. The exhaustion requirement clearly does not call for such a result.[3]

---

**2.** In any event, Cruz knew an appeal based on the *ex post facto* challenge would be futile. Requiring him to resubmit his claim would serve no useful purpose. *See e.g. Gee v. Director, Patuxent Institution,* 513 F.2d 814 (4th Cir.1975) (state prisoner not required to submit claim to state supreme court where that court has rejected the identical claim presented by the prisoner under identical circumstances).

**3.** To the extent petitioner claims in his Traverse that he was denied due process of law because the Parole Commission impermissibly delayed holding his initial parole hearing, the court finds petitioner's claim to be unexhausted. Peti-

tioner did not raise this issue on appeal to the National Appeals Board. (Exhibit to petitioner's Traverse). In any event, 28 C.F.R. § 2.12 does not require or mandate that an initial parole hearing be held within 120 days from the date of a prisoner's arrival at a federal institution as petitioner claims. The regulation explicitly provides that if a hearing cannot be held within the time frame proposed, it shall be held "as soon thereafter as practicable." 28 C.F.R. § 2.12(a). Thus, any failure to promptly hold a parole hearing, even when it results in the application of newly promulgated guidelines, does not violate due process.

III. *The Ex Post Facto Guarantee.*

Cruz claims that the use of parole guidelines promulgated after the commission of his crimes to determine his parole eligibility violates the constitutional prohibition against *ex post facto* laws. Article I of the United States Constitution provides that congress shall not pass any *"ex post facto Law."* *See* art. I, § 9, cl. 3; art. I, § 10, cl. 1. For a law to be *ex post facto,* it must possess three characteristics: it must be a criminal or penal measure, retrospective in application and disadvantageous to the offender because it may impose greater punishment. *Dufresne v. Baer,* 744 F.2d 1543, 1546 (11th Cir.1984), *cert. denied,* 474 U.S. 817, 106 S.Ct. 61, 88 L.Ed.2d 49 (1985) (citing *Weaver v. Graham,* 450 U.S. 24, 28–29, 101 S.Ct. 960, 963–964, 67 L.Ed.2d 17 (1981) and *Dobbert v. Florida,* 432 U.S. 282, 292–93, 97 S.Ct. 2290, 2297–98, 53 L.Ed.2d 344 (1977)). Even if applied retrospectively, a law which does not add to the quantum of punishment because it is merely procedural in nature does not violate the *ex post facto* clause. *Weaver v. Graham,* 450 U.S. at 29 n. 12, 101 S.Ct. at 964 n. 12. The Supreme Court has noted from the outset "that central to the *ex post facto* prohibition is a concern for 'the lack of fair notice and governmental restraint when the legislature increases punishment beyond what was prescribed when the crime was consummated.' " *Miller v. Florida,* — U.S. ——, 107 S.Ct. 2446, 2451, 96 L.Ed.2d 351 (1987) (citing *Weaver v. Graham,* 450 U.S. at 30, 101 S.Ct. at 965).

Cruz argues that the 1984 guidelines are more onerous than the 1980 guidelines in effect when he committed his crimes. While the 1984 guidelines are prospective in the sense that they relate to parole discretion to be exercised after their effective date, it is clear that application of these guidelines to determine petitioner's parole eligibility fulfills the retrospectivity requirement of *Weaver v. Graham* because they were not in effect in 1982, the last year any acts were committed to further any of petitioner's conspiracies. Cruz contends that under the 1980 guidelines, his offenses would have been rated a category 6 severity which, when combined with his salient factor score of 8, would have placed him in a recommended guideline range of 40 to 52 months.[4] Under the 1984 guidelines, petitioner's offense severity was scored as a category 8. This resulted from the creation of a new category of severity dealing with large scale drug distribution or possession cases. Combined with the salient factor score of 6, which petitioner concedes is the same under both sets of guidelines, petitioner's new parole guideline mandates a minimum service of 100 months prior to parole. Thus, Cruz contends the panel's use of the 1984 guidelines to make his parole determination violated the *ex post facto* clause because he received a more onerous punishment than that which he would have received under the guidelines in effect at the time of his crimes. In support of his claim, petitioner cites *Rodriguez v. United States Parole Comm'n,* 594 F.2d 170 (7th Cir.1979). The court finds the analysis inapposite. The *Rodriguez* opinion deals with the retrospective application of sentencing guidelines, not parole guidelines. There is no question that sentencing guidelines laws may not constitutionally be applied retroactively unless they are merely procedural in nature. *Miller v. Florida,* 107 S.Ct. at 2451–53.

■ The Fourth Circuit has yet to determine whether the retrospective application of the federal parole guidelines offends the *ex post facto* clause.[5] Nine circuit courts of appeal and one Supreme Court justice

---

4. The parole guidelines integrate two factors, offense characteristics (severity) and offender characteristics (salient factor score), *see* 28 C.F.R. § 2.20 (1987), on a grid where the offender characteristics suggest a range of time to be served before release for each level of severity.

5. The Fourth Circuit has found that the *ex post facto* clause bars the Parole Commission from considering the severity of an offense when setting parole dates for youthful offenders committing crimes prior to 1976, the date that factor became applicable to youthful offenders. *Marshall v. Garrison,* 659 F.2d 440 (4th Cir.1981); *Gill v. Garrison,* 675 F.2d 599 (4th Cir.1982) (youthful offender being considered for reparole after commission of offense while on parole).

have concluded that no *ex post facto* violation exists from retroactive application.[6] Several reasons have been advanced for upholding the retrospective application of federal parole guidelines.

The majority of the courts upholding the federal parole guidelines against constitutional challenges have found that the guidelines are not "laws" for purposes of the *ex post facto* clause. *See Miller v. Florida,* 107 S.Ct. at 2453 (and citing cases). Other courts have skirted the definitional issue and found that the guidelines "merely rationalize the exercise of statutory discretion, and that retrospective application of the guidelines thus does not violate the *Ex Post Facto* Clause." *Id.* (citations omitted). Finally, other courts have held, in the alternative, that because retrospective application of the guidelines does not result in a more onerous punishment, there is no violation of the *ex post facto* clause. *Id.; see also Yamamoto v. United States Parole Comm'n.,* 794 F.2d at 1298 n. 8.

In *Dufresne v. Baer,* 744 F.2d 1543 (11th Cir.1984), *cert. denied,* 474 U.S. 817, 106 S.Ct. 61, 88 L.Ed.2d 49 (1985), the Eleventh Circuit addressed virtually the identical claim presented by petitioner in the case at bar. Dufresne, a pilot for Pan American Airlines, began trafficking in illicit drugs and was ultimately indicated for conspiracy to import opium and cocaine and possession with intent to distribute opium. The indictment alleged that these acts were committed during the period from March 1978 to March 1979. At the time of the commission of these offenses, Dufresne's offense severity rating would have been classified as "very high." In mid–1979, the parole guidelines were revised and upon petitioner's consideration for parole in May of 1980, his offense severity was rated as "greatest I," a higher level of severity than a "very high" rating. His salient factor score was computed to be the same value under both versions of the guidelines. Application of the 1979 guidelines suggested that Dufresne be incarcerated for a period between 26 to 36 months before parole. The revised guidelines required Dufresne to serve 52 months prior to being considered for parole. Dufresne's sole complaint was that applying the guidelines in effect at the time of his parole hearing rather than those effective when he committed the crimes retroactively enhanced the punishment for his crime in violation of the *ex post facto* prohibition.

In part relying on Justice Rehnquist's opinion in *Portley v. Grossman,* 444 U.S. at 1312–13, 100 S.Ct. at 714–15, the Eleventh Circuit found that the Commission's guidelines are simply guidelines and not laws for the purposes of the *ex post facto* clause. *Dufresne,* 744 F.2d at 1550 n. 20. Thus, Dufresne's petition was denied. The court correctly noted that the change in the guidelines does not affect the sentence imposed by the court, it merely indicates when a prisoner may expect release from that sentence. In essence, the guidelines operate to provide a framework for the Parole Commission's exercise of its statutory discretion. A potential parolee may not be held in confinement beyond the term imposed by the judge. As Justice Rehnquist stated, the guidelines "neither deprive [an] applicant of any pre-existing right nor enhance the punishment imposed." *Portley,* 444 U.S. at 1312–13, 100 S.Ct. at 715. Any change in the guidelines

---

6.  *Resnick v. United States Parole Comm'n.,* 835 F.2d 1297, 1301 (10th Cir.1987); *Sheary v. United States Parole Comm'n.,* 822 F.2d 556, 558 (5th Cir.1987); *Beltempo v. Hadden,* 815 F.2d 873, 875 (2d Cir.1987); *Wallace v. Christensen,* 802 F.2d 1539, 1554 (9th Cir.1986); *Prater v. United States Parole Comm'n.,* 802 F.2d 948, 954 (7th Cir.1986); *Yamamoto v. United States Parole Comm'n.,* 794 F.2d 1295, 1297 (8th Cir.1986); *U.S.A. ex rel. Forman v. McCall,* 776 F.2d 1156, 1164 (3d Cir.1985), *cert. denied,* 476 U.S. ?119, 106 S.Ct. 1981, 90 L.Ed.2d 663 (1986); *Dufresne v. Baer,* 744 F.2d 1543, 1549–50 (11th Cir.1984), *cert. denied,* 474 U.S. 817, 106 S.Ct. 61, 88 L.Ed.2d 49 (1985); *Warren v. United States Parole Comm'n.,* 659 F.2d 183, 197 (D.C.Cir.1981), *cert. denied,* 455 U.S. 950, 102 S.Ct. 1454, 71 L.Ed.2d 665 (1982); *Ruip v. United States,* 555 F.2d 1331, 1335–36 (6th Cir.1977); *see Portley v. Grossman,* 444 U.S. 1311, 1312–13, 100 S.Ct. 714, 714–15, 62 L.Ed.2d 723 (1980) (in chambers opinion of Rehnquist, Circuit Justice). In *United States v. DiRusso,* 548 F.2d 372 (1st Cir.1976), the First Circuit has indicated that the guidelines are not "laws," but that circuit has not expressly addressed the issue presented here.

is procedural rather than substantive and retroactive application does not implicate the *ex post facto* prohibition. This court agrees with the rationale developed by Justice Rehnquist. The guidelines are not laws for the purposes of *ex post facto* analysis because there is no enhancement or effect on the terms of the sentence as a result of their application. Parole is a matter of grace, rather than an entitlement[7] and requiring a prisoner to serve more of his sentence than he would under previous guidelines does not make his punishment more onerous.

Placing procedural boundaries on the exercise of the Commission's discretion does not automatically transpose these guidelines to laws subject to the prohibition. *See Wallace v. Christensen*, 802 F.2d at 1553. The Commission retains the discretion to set presumptive parole dates above or below the guidelines for appropriate circumstances. *See* 28 C.F.R. § 2.20(c); 18 U.S.C. § 4206(c). The guidelines are used to promote greater consistency in parole decision making, not to deprive the Commission of its discretion, a result which might cause a transformation of the guidelines into laws for the purposes of the *ex post facto* clause. These guidelines simply do not have any of the characteristics of laws; they are flexible, not fixed and rigid, and the Commission retains the authority to make decisions outside the guidelines. Thus, *ex post facto* analysis is inapplicable. *See Ruip v. United States*, 555 F.2d at 1335 (guidelines are not laws nor are they agency interpretation of laws subject to *ex post facto* prohibition).

### IV. *Conclusion.*

The holding in this case is limited to the constitutionality of the retrospective application of procedural changes in the federal parole guidelines to an inmate who committed a crime before the enactment of the alteration. This holding does not rule out the possibility of cases where a change in the parole process could violate the clause. For example, retrospective application of a rule changing the method for computing "gain time for good conduct" may violate the *ex post facto* clause. *See Yamamoto*, 794 F.2d at 1300 (citing *Weaver v. Graham*, 450 U.S. at 35–36, 101 S.Ct. at 967–968). Similarly, adverse changes in the frequency with which a prisoner is considered for parole or for computing the time when he first becomes eligible for parole may also violate the clause. *Id.* (citations omitted). Finding constitutional the retrospective application of federal parole guidelines is supported by a persuasive line of authority. Accordingly, judgment is entered in favor of the respondents and against the petitioner.

An appropriate order shall issue.

---

7. *See Bradford v. Weinstein*, 519 F.2d 728 (4th Cir.1974) (parole is a privilege that may be granted or withheld), *vacated as moot*, 423 U.S. 147, 96 S.Ct. 347, 46 L.Ed.2d 350 (1975).